IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**CONRAAD L. HOEVER,**

    Plaintiff,

vs.                                                           Case No. 4:14cv220-RH/CAS

**M. MILLETTE,**
**CAPTAIN C. FLETCHER,**
**and LIEUTENANT V. WATSON,**

    Defendants.

_____/

## SECOND REPORT AND RECOMMENDATION[1]

Plaintiff Conraad Hoever, an inmate proceeding pro se and in forma pauperis, filed a civil rights complaint against three Defendants, ECF No. 1, all of whom were prison officials at Franklin Correctional Institution at the time of the event at issue. After resolution of Defendants' motion to dismiss, ECF No. 16, only Mr. Hoever's retaliation claim continued. The parties engaged in discovery, ECF No. 34, and then filed motions for summary judgment. The first motion was filed by Defendant Fletcher, ECF

---

[1] The first Report and Recommendation, ECF No. 26, concerned Defendants' motion to dismiss, ECF No. 16, which was granted in part. See ECF No. 31.

No. 43, and the second motion was filed by Defendants Millette and Watson, ECF No. 49.  Mr. Hoever was advised of his obligation to file opposition to those motions, ECF Nos. 46 and 50, and he filed a single response in opposition to both motions.  ECF No. 52.

**The Complaint, ECF No. 1**

As it concerns the surviving retaliation claim, Mr. Hoever alleged that he was punished with a retaliatory, false disciplinary report by Defendant Fletcher in violation of his First Amendment rights.  ECF No. 1 at 7-9.  Defendant Watson was a member of the disciplinary hearing team and Defendant Millette was the "chair."  *Id.* at 10.  Plaintiff contends those Defendants sentenced him to 30 days in disciplinary confinement to teach him a lesson about not challenging the system and to stop writing grievances.  *Id.* at 10.   As relief, Plaintiff seeks compensatory damages, punitive damages, and declaratory and injunctive relief.  *Id.* at 12-13.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Cir. 2004). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and disputed matters of professional judgment."),[3] but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted). In addition, even if a factual dispute exists between the parties, "[o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004) (citing Anderson, 106 S.Ct. at 2510)).

---

[3] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

**Relevant Rule 56 Evidence**

On Saturday, August 17, 2013, Franklin Correctional Institution was on lockdown following the murder of an inmate by another inmate. Ex. 1, ECF No. 44-1 at 26 (Plaintiff's deposition).[4] The lockdown had been scheduled to be lifted mid-morning, but at approximately 6:30 a.m., Captain Cory Fletcher entered the dormitory and announced that because two inmates had "acted up" during the prior night, lockdown would be extended for the inmates in E-dorm. *Id.* at 26-27, 101. Captain Fletcher said that nobody could get off their bunk, and then asked if there were any questions. *Id.* at 26-27. Mr. Hoever raised his hand and Captain Fletcher said, "What is your question, what do you have to say?" *Id.* at 27, 32, 104. Mr. Hoever asked why he had to be punished for something he had not done. *Id.* at 104. Captain Fletcher then directed that Mr. Hoever be handcuffed and taken to confinement. *Id.* at 27, 32.

At approximately 8:30 a.m., Captain Fletcher wrote a disciplinary report for Mr. Hoever, charging him with violating Rule 2-3 (creating,

---

[4] The page numbers referenced are to the page number printed on the deposition transcript and not the page number on the Court's electronic docket because, as a prisoner, Mr. Hoever does not have access to the electronic docket. Additionally, references to the exhibits submitted with Captain Fletcher's summary judgment motion, ECF No. 44, are made to an exhibit number, and references to the exhibits submitted to the summary judgment motion filed by Defendants Millette and Watson, ECF No. 49, are by letter.

participating in or inciting a minor disturbance). Ex. 2, ECF No. 44-2 at 4. The disciplinary report[5] charged that while Fletcher was counseling with inmates in E-Dorm, Mr. Hoever "looked over" at him "and shouted 'I demand to know why I am being made to stay on my bed.'" *Id.* Captain Fletcher's statement of facts went on to state that Mr. Hoever began "looking at other Inmates in the dorm as if he was waiting on them to join in with him." *Id.* Captain Fletcher said he instructed Mr. Hoever "to report to the vestibule and remain quiet." *Id.* Mr. Hoever "got off his bed and mumbled all the way to the dorm vestibule." *Id.*

Mr. Hoever was delivered a copy of the disciplinary charge around 3:00 that afternoon. Ex. C, ECF No. 49-3 at 66 (Hoever's deposition). Mr. Hoever did not request any physical evidence be submitted in the disciplinary hearing, but he did request a total of five witness statements be presented, three from inmate witnesses and two from prison officials. *Id.* at 67-68, 120 (Hoever's deposition); *see also* Ex. C, ECF No. 49-3 at 47-48. Each of the three inmate witnesses generally stated that after Captain Fletcher addressed the dormitory and asked if anyone had a question, Mr. Hoever attempted to speak to the Captain, but he was cut off and told to go

---

[5] The disciplinary report was signed by Captain Fletcher as both the "Reporting Officer" and the approving Supervisor. Ex. 2, ECF No. 44-2 at 4.

to the foyer.  Ex. C, ECF No. 49-3 at 49-51.  Each of the prison officials' statements (Officer Bankston and Sergeant Clayton) made the same assertion: "D.R. is true as written."  *Id.* at 52-53; *see also* Ex. B (ECF No. 49-2 at 13-14).

The disciplinary hearing was held on August 22, 2013.  Ex. 3, ECF No. 44-3 at 1 (Millette declaration).  Officer Melissa Millette, a senior classification officer, "was assigned to serve as the Chair of the Disciplinary Hearing Team" which considered the disciplinary report written against Mr. Hoever by Captain Fletcher.  *Id.*  Officer Millette states that she reviewed all documentation submitted, including the witness statements, Mr. Hoever's statement, and the statement of facts written by Captain Fletcher in the disciplinary report.  *Id.* at 2.  After considering all the "documentary and verbal evidence," the Disciplinary Team concluded that Mr. Hoever committed the violation as charged.  *Id.* at 3.  Officer Millette said the Team reached that "conclusion based on the evidence presented and [their] determination of the witnesses' credibility."  *Id.*  Mr. Hoever was found guilty and sentenced to 30 days in disciplinary confinement.  Ex. B, ECF No. 49-2 at 18.  Officer Millette states that the Team's "decision was not influenced, forced, coerced, or altered by any pressure or influence exerted on us by Captain Fletcher."  Ex. 3, ECF No. 44-3 at 3.

Officer Millette has declared that Mr. Hoever's allegations are "absolutely untrue."  Ex. A, ECF No. 49-1 at 2 (Millette affidavit #2).[6]  She asserts that Mr. Hoever "was ultimately found guilty of the DR based solely on the evidence presented at the disciplinary hearing, and the Disciplinary Hearing Team's determination of the witnesses' credibility, and that the evidence supported the charge."  *Id.*  Officer Millette states that she did not retaliate against Mr. Hoever and contends Mr. Hoever "was not found guilty based on any motive of retaliation."  *Id.*

Lieutenant Velmon Watson[7] was also assigned to serve on the Disciplinary Hearing Team.  Ex. 4, ECF No. 44-4 at 1-3 (Watson affidavit).  He also contends that the Team considered all the evidence and determined that Mr. Hoever committed the offense as charged.  *Id.* at 2-3.  Lieutenant Watson declares in a second affidavit that Mr. Hoever's claims against him "are absolutely untrue."  Ex. B, ECF No. 49-2 at 2 (Watson affidavit #2).  Lieutenant Watson states that he never took any action against Mr. Hoever in retaliation for filing grievances of any kind.  *Id.*  Lieutenant Watson advises that he has "never convicted an inmate of a DR

---

[6] An earlier affidavit from Officer Millette was submitted with Captain Fletcher's motion for summary judgment, ECF No. 44.

[7] Mr. Watson retired from the Department of Corrections in August 2014.  Ex. B (ECF No. 49-2 at 1).

or sentenced him to disciplinary confinement for any reason other than that the evidence supported the charge." *Id.* He denies that he ever convicted any inmate "of a DR to teach them to stop challenging the system." *Id.* Lieutenant Watson asserts that the officer in charge of the disciplinary hearing would never allow an inmate to be convicted "of a DR to retaliate against him for utilizing his First Amendment rights" or permit retaliatory statements be made "to an inmate during a disciplinary hearing." *Id.* Lieutenant Watson also states that he does "not recall ever interacting with Hoever regarding any grievance he may have filed." *Id.* at 3. He notes that he "occasionally responded to inmate grievances while a Lieutenant at Franklin Correctional Institution, but [does] not recall ever responding to any grievance filed by [Mr.] Hoever." *Id.*

Mr. Hoever submitted his own affidavit in opposition to summary judgment. Plaintiff's Ex. A (ECF No. 52 at 23-27). Mr. Hoever said that on August 17, 2013, after Captain Fletcher asked if anyone had a question, he "politely raised [his] hand" and was given permission to speak. *Id.* at 24. Mr. Hoever said he asked why he was being punished for something he did not do or know anything about. *Id.* He states that Captain Fletcher "went berserk" and told him to go to the vestibule area. *Id.* Captain Fletcher said that Mr. Hoever "was the one causing the disturbance with the grievances

[he] was writing." *Id.* Captain Fletcher told Mr. Hoever that he "was going to teach" him "to stop writing grievances, not to speak as wanting to be a spokesperson, and that [Mr. Hoever's] actions were to stop, now!!" *Id.* Mr. Hoever declares that he "did nothing disrespectful" to make Captain Fletcher get angry, except to file "lawsuits and grievances complaining about the conditions of [his] incarceration . . . ." *Id.* Mr. Hoever maintains the disciplinary report was false because he did "nothing disrespectful." *Id.*

Mr. Hoever averred that later that afternoon, Captain Fletcher went to Mr. Hoever's cell in confinement to ask him if he knew why he had been locked up. ECF No. 52 at 25. Mr. Hoever said he did not know why, explaining that he had "simply asked a question without disrespecting anyone." *Id.* Captain Fletcher told Mr. Hoever "that the reasonable was to teach [him] a lesson, that when prison officials do their work, inmates are not to interfere . . . ." *Id.* Captain Fletcher told Mr. Hoever not to speak, and if he did, he would be locked "up for being a spokesman and that the same goes for writing grievances." *Id.* Captain Fletcher told Mr. Hoever to stay quiet and not say anything if an officer asked for questions." *Id.*

Mr. Hoever appeared for the disciplinary hearing on August 22, 2013, before Classification Officer Melissa Millette and Lieutenant Watson. ECF No. 52 at 25. According to Mr. Hoever, Lieutenant Watson asked him how

Case No. 4:14cv220-RH/CAS

long he had been in prison and said that he ought to know by then "that when a prison official ask if anyone [has] questions," he "must not speak." *Id.* Lieutenant Watson told Mr. Hoever that doing so "was challenging the system." *Id.* Lieutenant Watson also said that grievances would not help Mr. Hoever and he "had to stop writing them, do whatever prison officials order and not to challenge what they do, or face severe consequences." *Id.* at 25-26. Lieutenant Watson told Mr. Hoever they were "going to teach [him] a lesson," and directed him to go outside while they deliberated. *Id.* at 26. When Mr. Hoever was brought back in, Lieutenant Watson told him that he "would spend 30 days in DC and that it should be a lesson for [him] to 'shape up.'" *Id.*

Mr. Hoever averred that on September 16, 2013, Captain Fletcher went to his cell again, requesting a promise that he "would not write anymore grievances or complain if [he] wanted to get out." ECF No. 52 at 26. Mr. Hoever was asked if he wanted out, and he said yes. *Id.* He was asked if he was going to write more grievances, and he said no. *Id.* Captain Fletcher said he would get Mr. Hoever out, but told him he would be brought back if he learned that Mr. Hoever was still complaining.[8] *Id.*

---

[8] Mr. Hoever has argued that Captain Fletcher forced him to promise to not write grievances "as the only condition for his release from" disciplinary confinement. ECF No. 52 at 5.

As additional evidence, Mr. Hoever submitted copies of grievances demonstrating that Captain Fletcher knew he had written grievances prior to the August 2013 incident. Plaintiff's Ex. B (ECF No. 52 at 22-27). Mr. Hoever suggests these grievances provided a motive to retaliate. ECF No. 52 at 15. One informal grievance was received by Captain Fletcher in late April 2012, see ECF No. 52 at 28, complaining of the manner in which lockers were searched and items confiscated. Mr. Hoever submitted another grievance in June 2013 complaining that an officer had abused his authority. Id. at 44. That grievance was also received by Captain Fletcher.

Another grievance shows that Captain Fletcher directed a correctional officer to write an Incident Report on Mr. Hoever because of a grievance he submitted in June 2013, alleging that the officer made verbal threats towards Mr. Hoever. Id. at 41. The officer advised that Mr. Hoever's grievance against him was false and Mr. Hoever was issued a "corrective consultation." Id. It appears that Lieutenant Watson responded to that grievance. Id. at 42.

Additionally, Lieutenant Watson directed Sergeant Nunez to write another Incident Report on Mr. Hoever because of a grievance he submitted in early August 2013, alleging that Nunez harassed him. ECF No. 52 at 45. Nunez advised that he had "no recollection of any incident

concerning" Mr. Hoever and stated he was always professional when dealing with inmates.  *Id.*  It appears that Mr. Hoever had directed the grievance to Lieutenant Watson's attention.  *Id.* at 46.

Finally, Mr. Hoever also submitted an affidavit of inmate George Rivera.  Plaintiff's Ex. I (ECF No. 52 at 49-52).  Mr. Rivera stated that he had witnessed staff at Franklin C.I. "single out [Mr.] Hoever for threats, harassment, physical intimidation, and reprisals for his writing grievances and pursuing civil rights complaints . . . ."  *Id.* at 50.  Mr. Rivera said he personally witnessed the events of August 17, 2013, and said Captain Fletcher "under pretext" placed Mr. Hoever "in confinement for allegedly 'inciting a riot' after inmate Hoever asked Captain Fletcher 'Why are we all being punished for something another inmate in another quad did?'"  *Id.* at 51.

**Analysis**

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Malloy v. Peters, 617 F. App'x 948, 950 (11th Cir. 2015), *cert. dismissed*, No. 15-8914, 2016 WL 1450456 (U.S. June 13, 2016); O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011); Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). However, "[a]n inmate cannot state a claim of retaliation for a disciplinary

charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process."[9] Malloy, 617 F. App'x at 950 (holding prisoner could not state a retaliation claim "because he was found guilty of the behavior underlying both disciplinary charges and was afforded adequate due process at the disciplinary hearing.") (citing O'Bryant, 637 F.3d at 1215)). In other words, there is no causal connection between a disciplinary report and a prisoner's freedom of speech if the disciplinary action would have been taken regardless of the prisoner's protected speech. O'Bryant, 637 F.3d at 1217 (citing Mosley, 532 F.3d at 1278, n.22). "Any possible causal connection between the protected activity (the grievances) and the harm (the disciplinary charges and sanctions) is severed since the harm is not in reaction to any protected activity, but directly due to an improper activity." O'Bryant, 637 F.3d at 1219-20.

As explained in Malloy, "[a]dequate due process requires that the inmate have (1) advance written notice, (2) an opportunity to present witnesses and evidence at his disciplinary hearing, and (3) a written

---

[9] The disciplinary hearing procedures must comply with the due process standards announced in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and be supported by "*some evidence* in the record" as required by Superintendent v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). O'Bryant, 637 F.3d at 1213.

statement from the factfinder outlining the evidence relied upon and the reasons for the disciplinary action." 617 F. App'x at 950. A prisoner has received due process so long as there is "some evidence in the record that supports the decision of the disciplinary board." *Id.*

In this case, Mr. Hoever has raised a dispute about the incident with Captain Fletcher. Mr. Hoever's version of the event (that he asked a question in a respectful manner) is different than the statement of facts presented in the disciplinary report (that Mr. Hoever was yelling and attempting to get other inmates to join in protest). Yet notwithstanding that dispute, Mr. Hoever was found guilty of the disciplinary report. Mr. Hoever was given notice of the charge in advance such that he was able to request witness statements be obtained and submitted as evidence. The witness statements, which were in conflict, were considered by the Disciplinary Hearing Team. The Team deemed the officers' version of events to be more credible.

This Court is not permitted to "conduct exhaustive reviews" of disciplinary hearings. O'Bryant, 637 F.3d at 1214 (citing Hill, 105 S.Ct. at 2775). The Court should not conduct an "independent assessment of the credibility of witnesses," or re-weigh the evidence. O'Bryant, 637 F.3d at 1213 (citing Hill, 105 S.Ct. at 2774). Rather, "the relevant question is

whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." 637 F.3d at 1213 (citing Hill, 105 S.Ct. at 2774 (emphasis in original)).  Here, there is evidence to support the charge based on the two witness statements of Officer Bankston and Sergeant Clayton.  Accordingly, because Mr. Hoever was found guilty of the behavior charged in the allegedly retaliatory disciplinary report, and there is evidence to sustain that finding, this First Amendment claim must fail.  Summary judgment should be granted in favor of the Defendants.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motions for summary judgment filed by Defendant Fletcher, ECF No. 43, and Defendants Millette and Watson, ECF No. 49, be **GRANTED**.

**IN CHAMBERS** at Tallahassee, Florida, on July 8, 2016.


    s/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**